UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| JAMES T. DERICO, SR., | ) |
| | ) |
|    Plaintiff, | ) |
| | ) |
| v. | ) Case No.: 2:12 CV 63 JVB APR |
| | ) |
| ARCELORMITTAL USA LLC, | ) |
| | ) |
|    Defendant. | ) |

OPINION AND ORDER

This matter is before the court on the Defendant's Motion to Quash Plaintiff's Request to Enter Onto Designated Land [DE 31] filed on June 3, 2013. For the following reasons, the motion is **DENIED.**

*Background*

This matter arises from an incident involving the plaintiff, James Derico, while testing a tundish car on the property of the defendant, Arcelormittal. The tundish car moved from an off-line position, which was away from a deck pulpit and shanty door, to an on-line position, which was next to the deck pulpit and shanty door. During the testing, the operator of the tundish car moved the car before Derico was able to exit into the shanty. Derico was caught between the ladle deck pulpit and moving tundish car. The incident resulted in crushing injuries to his ankles.

Arcelormittal's preceding counsel agreed to an inspection of the plant where the incident occurred. The inspection was scheduled during an outage of the plant so that Derico, his counsel, and his expert could access the tundish car, shanty, and other parts of the machinery

1

were Derico was injured closely, and take pictures and measurements. Derico's counsel never requested any equipment to be placed in a specific location or that it be made operable during the inspection. Because the plant was not operating at the time of the inspection, the tundish car could not be moved from the off-line to the on-line position as Derico requested upon inspection.

Arcelormittal had three employees, plus its counsel, assisting Derico's group for three hours with the inspection. Arcelormittal provided security clearance documentation, secured proper protective clothing, drove them to the plant in a company van, gave them on-site safety instruction, and guided them through the facility. Arcelormittal bore the cost of employee time, resources, materials, and expenses. Derico's counsel's consultant took over 100 photographs of the tundish car, shanty, and controls of the machinery.

After the initial inspection, Derico asked to re-enter Arcelormittal's property to inspect the tundish car and shanty in the on-line and off-line position, and while the machinery was in motion. Arcelormittal's counsel refused, explaining that it would incur considerable costs due to the use of employee time, resources, materials, and other expenses. It is Arcelormittal's position that Derico should have requested the conditions for the inspection prior to the first inspection and that it is not required to allow inspection of its property multiple times. Alternatively, Arcelormittal offered to have its own employees re-enter and photograph the tundish car, ladle deck, and shanty while the tundish car was in an online position for Derico.

*Discussion*

Federal Rule of Civil Procedure 34(a) states that "[a] party may serve on any other party a request . . . to permit entry onto designated land or other property possessed or controlled by

the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." The request must "describe with reasonable particularity each item or category of items to be inspected" and "a reasonable time, place, and manner for the inspection and for performing the related acts". **Rule 34(b)**.

The burden "rests upon the objecting party to show why a particular discovery request is improper." *Gregg v. Local 305 Ibew*, 2009 WL 1325103, *8 (N.D. Ind. May 13, 2009)(citing *Kodish v. Oakbrook Terrace Fire Protection Dist.*, 235 F.R.D. 447, 449-50 (N.D. Ill. 2006)); *McGrath v. Everest Nat. Ins. Co.*, 2009 WL 1325405, *3 (N.D. Ind. May 13, 2009)(internal citations omitted); *Carlson Restaurants Worldwide, Inc. v. Hammond Professional Cleaning Services*, 2009 WL 692224, *5 (N.D. Ind. March 12, 2009)(internal citations omitted). The objecting party must show with specificity that the request is improper. *Cunningham v. Smithkline Beecham*, 255 F.R.D. 474, 478 (N.D. Ind. 2009)(citing *Graham v. Casey's General Stores*, 206 F.R.D. 253, 254 (S.D. Ind. 2002)). That burden cannot be met by "a reflexive invocation of the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence." *Cunningham*, 255 F.R.D. at 478 (citing *Burkybile v. Mitsubishi Motors Corp.*, 2006 WL 2325506, *6 (N.D. Ill. Aug. 2, 2006))(internal quotations and citations omitted). Rather, the court, under its broad discretion, considers "the totality of the circumstances, weighing the value of material sought against the burden of providing it, and taking into account society's interest in furthering the truth-seeking function in the particular case before the court." *Berning v. UAW Local 2209*, 242 F.R.D. 510, 512 (N.D. Ind. 2007)(examining *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th

Cir. 2002))(internal quotations and citations omitted). *See also,* **Hunt v. DaVita, Inc**., 680 F.3d 775, 780 (7th Cir. 2012)(explaining that the district court has broad discretion in supervising discovery).

The parties dispute whether Derico reasonably described the manner for the inspection, and consequently, whether a second inspection is mandated by the federal rules. In support, Derico refers the court to ***Schofield v. U.S. Steel Corporation***, 2005 WL 3093483 (N.D. Ind. Nov. 18, 2005). In *Schofield*, the court ordered the defendant to permit the plaintiff to inspect the premises for a second time because during the first inspection, the defendant improperly imposed restrictions on the plaintiff. The plaintiff had proposed procedures for photographing and videotaping the premises, and the defendant did not object until the parties were in the midst of the inspection.

Here, the dispute is different. Arcelormittal states that Derico's counsel did not set forth a manner of inspection prior to the first inspection. Specifically, he did not state that the expert would need to manipulate the equipment. Neither party submitted Derico's original request for inspection, so it is not clear what specifically he asked to inspect. The issue then is whether the omission to request that the tundish car be placed in the on-line position, as it was when Derico was injured, and that the equipment be mobile, fails to state with reasonable particularity the manner for inspection. And, if it was sufficient, whether Arcelormittal has met its burden to show that the second inspection is unwarranted.

Arcelormittal argues that because Derico had worked in its facility, he should have known that his team would not be able to move the machinery because the inspection was taking place during an outage. However, it is not evident that Derico knew what the expert his attorney

4

hired intended to do at the inspection. This is not a basis on which to deny the second inspection. Rather, the primary concern is whether Derico's counsel's failure to request such conditions was fatal to his second request.

Presumably, Derico's counsel requested to inspect the area where Derico was injured. Derico was injured while the tundish car was in the online position and while the parts were moving. Because the accident occurred while the tundish car was near the shanty and while the equipment was moving, it was logical to assume that the equipment would be made available for inspection in a similar manner. It is not clear why Arcelormittal believes Derico's team would presume otherwise. Both parties were aware of the location and means of the incident. For this reason, the court finds that Derico's counsel did not err by failing to provide an appropriate description of the manner of inspection.

Arcelormittal further argues that inspection is unwarranted because it would be duplicative and costly. Arcelormittal would have to expend time and resources providing security clearance documentation, securing protective clothing, giving on-site safety instructions, and guiding them through the facility. First, its not clear why some of these tasks are expensive, nor is it evident that they all would have to be repeated or that it would be necessary to involve so many of its employees. For example, Derico's team already was provided with clearance documentation and safety instructions. Moreover, the previous inspection took 3 hours of the Arcelormittal's time, which is not an overly excessive demand. Arcelormittal states that it offered to take the pictures of the tundish car in the on-line position itself. It is not clear why this alternative would save so much time and expense as compared to allowing Derico and his team to come and inspect the property themselves.

Based on the foregoing reasons, Arcelormital's Motion to Quash Plaintiff's Request to Enter Onto Designated Land [DE 31] is **DENIED.**

ENTERED this 23rd day of October, 2013

/s/ Andrew P. Rodovich
United States Magistrate Judge